UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FAUSTINO PUJOLS,                                          INDEX NO. 20-cv-10373 (GHW)

                                                          THIRD AMENDED
                          Plaintiffs,                     COMPLAINT
              -v.-

RTS SOLUTIONZ, INC a/k/a SOLUTIONZ, INC.
and as successor to Real Time Services, Inc,
Bill Warnick, CEO and Kirk R. Fernandez, CEO,
Individually,

                          Defendants.
-------------------------------------------------------------------X

        Plaintiff Faustino Pujols ("Plaintiff Pujols") by and through his attorney, Susan Ghim of

the Law Office of Susan Ghim, complaining of RTS Soultionz, Inc. aka Solutionz, Inc.

("Solutionz") successor to and Real Time Services, Inc., ("RTS"), Bill Warnick, CEO

("Defendant Warnick"), individually, and Kirk R. Fernandez, CEO ("Defendant Fernandez"),

individually, (collectively "Defendants"), allege as follows:

                              **NATURE OF THE ACTION**

1.        Plaintiff Faustino Pujols ("Plaintiff Pujols") brings this action pursuant to Fair Labor

Standards Act ("FLSA"), 29 USC 216(b) and 29 U.S.C.§§ 201 et. seq. to remedy violations of

the wage-and-hour provisions of the FLSA in order to remedy Defendants' policies and

practices of wrongful withholding or non-payment of employees' earned overtime wages

compensation for all hours worked over 40 hours per work week, failure to provide proper wage

notices and proper wage statements.  Defendants further misclassified Plaintiff Pujols as an

exempt salaried  employee when at all relevant times of his employment Plaintiff Pujols actually

performed non-exempt manual labor for actual overtime hours of approximately 20-25 hours per

work week past 40 hours per week.  Based on this willful misclassification, Defendants salaried

Plaintiff Pujols to avoid paying him his hourly and overtime wages for all hours he actually

worked which was approximately twenty (20) to twenty five (25) hours over forty hours per

workweek or approximately sixty (60) to sixty (65) hours per work week.  These actual hours

were reflected in time sheets that Plaintiff Pujols submitted to human resources despite not being

paid for those overtime hours nor having his actual hours worked reflected on his wage

statements.

2.      Based upon information and belief, RTS Solutionz, Inc. acquired Real Time Services Inc,

("RTS"), its business locations and its employees on or about 2016.   Plaintiff Pujols commenced

his employment with RTS from on or about 2007 until it was acquired on or about 2016 by

Solutionz.

3.      Plaintiff Pujols  worked as manual laborer for RTS Solutionz, Inc. ("Solutionz")  and/ or

Solutionz as *successor* to Real Time Services Inc, ("RTS") since on or about January 2016 and

for RTS prior to January 2016.  Prior to 2016 when Solutionz Inc. acquired Real Time Services,

Inc. ("RTS"), Plaintiff worked for RTS since on or about 2007.   Plaintiff's  primary job duties

entailed the transportation of goods sold in interstate commerce and installation of heavy

commercial video / audio and ancillary equipment at clients' worksites or premises.

4.      At all relevant times, Plaintiff Pujols  was dispatched by their Solutionz supervisors from

physical office locations in NYC and Long Island.   Since on or about 2014, Plaintiff Pujols

received a regular hourly wage of approximately $30 per hour with an overtime rate of $45 per

hour for hours worked over 40 hours per work week.

5.      Since on or about 2016, Solutionz employed RTS employees including Plaintiff Pujols

and paid their wages.  Plaintiff Pujols reported regularly during each work week during the

relevant time period, to Solutionz' office location with an address of 1001 6th Avenue, Suite

1202 New York, NY 10018.  To report his time and inquiries regarding the terms and conditions

of his employment Plaintiff and collective Plaintiffs were required to report to Solutionz Human

Resources located in Los Angeles, CA.

6.      Based upon information and belief, from on or about 2018, Plaintiff Pujols was given an

assistant manager title and salaried as non-exempt employees for Solutionz to avoid paying

Plaintiff Pujols his overtime wages.  Plaintiff did not at any relevant time expressly agree to

payment of a salary for hours worked beyond 40 hours per week nor did Plaintiff otherwise agree

to a fixed salary wage in satisfaction of any hours worked beyond a 40 hour work week or to

waive any other vacation, paid leave or sick pay.

7.      Plaintiff Pujols brings this action against  Defendants for  unlawfully having misclassified

Plaintiff as an exempt salaried employee and failed to pay Plaintiff overtime wages for hours

Plaintiff  actually worked past forty (40) hours per workweek pursuant to the Federal Rules of

Civil Procedure 23 to remedy violations of Article 6 of the New York Labor Law ("NYLL") and

their respective and attendant rules, regulations and wage orders.

8.       Plaintiff Pujols also brings this action  to remedy Defendants' violations of NYLL

Article 6 §190 et seq., New York State Department of Labor wage orders and regulations and

failure of Defendants to comply with notice and record-keeping requirements.

9.      Defendants engaged in their unlawful conduct pursuant to a corporate policy of

minimizing labor costs and denying employees compensation by knowingly violating the FLSA

and NYLL.

10.     Plaintiff Pujols further brings an action pursuant to Title I of the Americans with

Disabilities Act Amendments Act of 2008 ("ADAAA" or "ADA" as amend. 2008) effective

January 1, 2009, 42 USC §12101 et seq.  In violation of 42 USC §12112 et seq, Defendants

discriminated against Plaintiff, a qualified individual on the basis of his disability, specifically

torn shoulder rotator cuffs.  At all relevant times, Plaintiff performed at least the essential

functions of his position as a field tech and as assistant or junior project manager.  Defendants

failed to provide reasonable accommodations for his disability when they limited, segregated and

misclassified Plaintiff as an assistant manager only to salary his compensation.  Plaintiff

accepted the position as a reasonable accommodation to restructure his duties to minimal

physical labor.  However, Plaintiff's physical job duties never changed.  Defendants used this

misclassification of Plaintiff to avoid payment of overtime compensation and then terminated

Plaintiff on or about August 10, 2020.  At the time of Plaintiff's termination, he was mid-project,

on approximately three (3) separate projects that he was assigned to.  Due to the unchanged

physical labor demands of his position, Plaintiff re-injured his shoulders at work on or about

August 5, 2020.  Shortly thereafter, on or about August 10, 2020, Defendants discharged

Plaintiff who had already returned to work, under the pretext that they eliminated this

misclassified, limited and segregated position.  By doing so, Defendants unlawfully ceased

Plaintiff's reasonable accommodation in violation of the ADAAA.

11.     Defendants  misclassified and/or salaried Plaintiff as an exempt employee when Plaintiff

was required to and did  continuously performed manual labor duties and performance of those

non-exempt duties remained unchanged throughout the relevant time period to enable

Defendants' avoidance of payment of overtime wages to Plaintiff Pujols  in violation of FLSA

and NYLL.

12.     Plaintiff Pujols seeks compensation for Defendants' failure to pay overtime wages, back

pay for retaliatory termination, liquidated damages, penalties, compensatory damages, pre-

judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and

NYLL and reinstatement to employment with reasonable accommodations, back pay, front pay,

lost benefits, compensatory and punitive damages under the ADAAA

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action pursuant to 28 USC §1331, §1337,

29 USC §216 (b), (c),§ 217and ADAA 42 USC §12101 et seq.

14.     This Court has supplemental jurisdiction over the New York state law claims under the

28 USC  §1367(a).

15.     This Court may properly maintain personal jurisdiction over Defendants under Rule 4 of

the Federal Rules of Civil Procedure because Defendants' contacts with this state and this

judicial district are sufficient for exercise of jurisdiction over Defendants so as to comply with

traditional notions of fair play and substantial justice

16.     Venue in this district is proper under 28 USC §1391 because all or a substantial part of

the events or omissions giving rise to the claims occurred in this district.  Defendants' New York

office was also located in this district with an address of 1001 6th Avenue, Suite 1202 New York,

NY 10018.


## The Parties and Factual Allegations

### Defendant Solutionz, Inc.

17.     Based upon information and belief, RTS Solutionz, Inc. ("Solutionz") is a Nevada (NV)

corporation that is authorized as a foreign corporation to do business in and currently does

business in the state of New York (NY).  Solutionz has a principal business address of 901

Bringham Avenue, Los Angeles, CA 90049.

18.     At all relevant times, Solutionz was "an enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203 (s)(1)(A) because Solutionz conducts business nationally with clients, vendors and other businesses located in states outside CA including but not limited to NY and Pennsylvania (PA).  Solutionz also transports goods sold in interstate commerce, e.g. audio / video equipment to client locations nationwide.

19.     Based upon information and belief, Solutionz currently dispatches New York resident employees to New York State worksites from one of its locations in PA.

20.     At all relevant times, Solutionz was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a) and employed Plaintiffs within the meaning of the FLSA.

21.     Based upon information and belief, Solutionz does business nationally, in various states including but not limited to the states of PA, NY and CA.  Currently and to date, Solutionz dispatches workers in NY or the tri-state area to NY state work projects from its offices in PA. Based upon information and belief, Soultionz closed all of its NY locations to minimize the cost of doing business in NY and as a pretextual reason for terminating some or all of its NY employees without notice during 2020 to avoid paying NY competitive hourly rates and overtime.

22.     Based upon information and belief, Solutionz has annual revenues far exceeding one million dollars per annum to satisfy the interstate commerce jurisdictional requirement under FLSA §201 et seq.  Solutionz annual gross volume of sales made, or business done, was not less than Five Hundred Thousand Dollars ($500,000.00) exclusive of seperate retail excise taxes, within the meaning of the FLSA, 29 U.S.C. § 203 (s)(1)(A)(ii).

23.     At all relevant times, Solutionz was a covered employer within the meaning of the FLSA, 29 U.S.C. §203(d), the NYLL §190, the N.Y. Executive Law § 292(5), and the N.Y Admin. Code. § 8-102(5).

24.     At all relevant times, Solutionz maintained control, oversight, and direction over the Plaintiffs including timekeeping, payroll and other employment practices that applied to them

**Individual Defendants**

25.     Based upon information and belief Bill Warnick was at all relevant times CEO of Solutionz and worked out of Solutionz HQ located in Los Angeles, CA.  As an officer and/or shareholder of Solutionz, Warnick had control and influence over and was liable for the labor and employment policies and practices of Solutionz.

26.     Based upon information and belief Kirk R. Fernandez is a CEO and founder of Solutionz and as an officer and/or shareholder of Solutionz, Fernandez had control and influence over and was liable for the labor and employment policies and practices of Solutionz.

27.     Specifically, the labor and employment policies and practices that were violated by Defendants in addition to the misclassification of non-exempt employees as exempt employees to evade payment of overtime wages, were failure to keep wage notices and acknowledgements mandated under NYLL with attendant penalties of a maximum of five thousand dollars ($5,000) per employee.

28.     Defendants created and maintained a work environment designed to oppress its employees to believe they were fortunate to have a job.  For fear of losing their jobs if any employee complained, manual labor employees were compelled to tax their physical capabilities that caused injury and disability without overtime compensation.  On or about August 7, 2020 when Plaintiff Pujols last suffered a serious re-injury to his shoulders on the job, that he injured

years prior also on the job with Solutionz, and Defendants could no longer take advantage of his physical labor for overtime hours without paying overtime wages, Defendants terminated Plaintiff Pujols employment on or about August 10, 2020 without notice and shortly after Plaintiff Pujols' filed a workers' compensation claim on or about August 7, 2020.

29.     Pursuant to FLSA, NYLL and New York State Business Corporation Law §630, Defendant Warnick and Defendant Fernandez are shareholders, officers and executives who are individually and personally liable for unpaid overtime wages of Plaintiff Pujols and Collective Plaintiffs.

**Joint Employers**

30.     At all relevant times throughout Plaintiff's employment, Individual Defendants were a "covered employer" within the meaning of the FLSA, the NYLL and employed or jointly employed Plaintiff, and is personally liable for the unpaid wages and other damages sought herein, pursuant to 29 U.S.C. § 203(d), NYLL § 2, N.Y. Executive Law § 296 (1)(a) and (6), and N.Y. Admin. Code § 8-107 (1) and (7)(v)

31.     At all relevant times throughout Plaintiff's employment, Individual Defendants Warnick, Fernandez and Corporate Defendants Solutionz and RTS were joint employers of Plaintiff, acted in the interest of each other with respect to employees and had common policies and practices as to wages and hours, pursuant to 29 CFR § 791 .2

32.     At all relevant times throughout Plaintiff's' employment, Individual Defendants Fernandez and Warnick had the discretionary power to create and enforce personnel decisions on behalf of the Corporate Defendant, including but not limited to: hiring and terminating employees; setting and authorizing issuance of wages: maintaining employee records: setting Plaintiff's and other employees' schedules; negotiating Plaintiff's rate of pay; instructing,

supervising and training Plaintiff; and otherwise controlling the terms and conditions for the Plaintiff while he was employed by Defendants.

33.    At all relevant times throughout Plaintiff's employment, Individual Defendants were actively involved in the day-today operations of Corporate Defendant by and through their supervisors and managers.

**Defendant Real Time Services, Inc.**

34.    Based upon information and belief, Real Time Services, Inc. (RTS) was a New York state corporation with a principal address of 85 Schmitt Blvd, Farmingdale, NY 11735 that employed Plaintiff Pujols and some or all of the class Plaintiffs since on or about 2007.   At all relevant times, Plaintiff Pujols reported to the Solutionz / RTS office located at 1001 6th Avenue, Suite 1202 New York, NY 10018 On or about January 2016, Solutionz acquired RTS, its video/audio installation business and some or all of its employees including Plaintiff Pujols.

35.    As an employer within the meaning of FLSA and NYLL, Solutionz as successor to RTS is liable to Plaintiff Pujols and collective Plaintiffs for partial or all of the FLSA and NYLL violations alleged in this Second Amended Complaint.

**Plaintiff Pujols**

36.    Plaintiff Pujols at all relevant times was a resident of New York state, Bronx County. Plaintiff Pujols and class Plaintiffs worked at client worksites in and around New York City.

37.    At all relevant times, Plaintiff was employed by Defendant Corporation within the meaning of the NYLL §§ 2 and 651

38.    Plaintiff Pujols was employed by Defendant, Solutionz, as an assistant project manager from on or about 2018 until Plaintiff Pujol was terminated from his employment on or about August 10, 2020.

39.     From on or about January 2016, Plaintiff Pujols was employed by the Defendant

Solutionz as a manual laborer or field technician.

40.     On or about 2016, the Worker's Compensation Board declared Plaintiff had a disability

comprised of loss of range of motion and use of both arms due to a previous workplace injury

based on medical physicians' examination and testimony.  Plaintiff had torn his shoulder rotator

cuffs while performing his work duties.

41.     At all relevant times, employer RTS Solutionz knew or should have known of Plaintiff's

disability and workers' compensation determination of his disability.

42.     At all relevant times, Plaintiff Pujols worked approximately sixty (60) to sixty five (65)

hours per workweek or twenty (20) to twenty five (25) hours past 40 hours per workweek.

43.      Throughout the duration of his employment with Solutionz and RTS, Plaintiff Pujols did

not have any supervisory authority, nor did he exercise discretion or independent judgment with

respect to matters of significance. Plaintiff never had any managerial duties, such as hiring and

firing employees, doing payroll and setting employees' hours of work.  Instead, Plaintiff Pujols

was required to perform heavy manual labor and submit timesheets reflecting his actual hours

worked of approximately 60 – 65 hours per workweek despite never receiving overtime wages

for those overtime hours actually worked by him.

44.     From on or about January 2007 to on or about 2018, Plaintiff Pujols worked for RTS and

RTS Solutionz as a manual laborer or field technician.

45.     From on or about 2007 to December 2015, Plaintiff worked as a manual laborer or field

technician for Defendant RTS until on or about January 2016 when Solutionz acquired RTS and

its employees including Plaintiff Pujols.  From on or about January 2014 through on or about

2018, Plaintiff Pujols worked an average of sixty (60) to sixty-five (65) hours per work week at

regular hourly rate of $30 per hour and an overtime rate of $45 per hour which was one and one half times the regular hourly rate.

46.     Since on or about 2016, Plaintiff Pujols was not paid his overtime wages from Solutionz/RTS.

47.     Since on or about January 2018, Solutionz misclassified Plaintiff Pujols as exempt and willfully denied paying Plaintiff Pujols any overtime wages due to him.   At all relevant times, even to the date of his termination from his employment with Solutionz, Plaintiff Pujols regularly worked approximately sixty (60) to sixty five (65) hours per work week and was not compensated by Defendants with overtime wages.

48.     Defendants limited, segregated and misclassified Plaintiff as an assistant manager in order to salary his compensation and deny him overtime wages that Plaintiff actually and regularly worked.

49.     On or about 2018, Plaintiff accepted the assistant manager or junior project manager position as a reasonable accommodation to restructure his duties to minimize physical labor on his previous work related injuries to his shoulders.  Defendants however failed to provide the reasonable accommodation and Plaintiff's job duties never changed.  Instead, Defendants used this misclassification of Plaintiff to avoid payment of overtime compensation that Plaintiff actually and regularly worked and then terminated Plaintiff on or about August 10, 2020, mid-project on approximately three (3) separate projects he was assigned to, under the pretext that they eliminated this misclassified, limited and segregated position when Plaintiff re-injured his shoulders on the job on or about August 5, 2020.  In effect, by eliminating Plaintiff's position, Defendants ceased their own reasonable accommodations in violation of the ADAAA.

50.     Since on or about January 2018, Plaintiff's regular hourly rate was approximately $37.50 per hour and an overtime hourly rate of $56.25 based on Solutionz annualized salary of $78,000 that was based on a forty (40) hour workweek.

51.     On or about August 7, 2020, Plaintiff Pujols suffered a shoulder injury on the job that necessitated an emergency hospital visit. Plaintiff Pujols had suffered a previous shoulder injury on the job on or about 2016.  Shortly after Plaintiff Pujols filed a Workers' Compensation on or about August 7, 2020 because he injured his shoulders on the job from performing manual labor Solutionz terminated Plaintiff Pujols on or about August 10, 2020 from his employment with Solutionz.  Specifically, Plaintiff Pujols' non-exempt duties entailed lifting large video and /or audio equipment for installation at clients' worksites in the New York City area.    Plaintiff Pujols non-exempt manual labor duties did not change since his employment with RTS predecessor to Solutionz on or about January 2007 even after Plaintiff Pujols was classified as an exempt assistant manager and salaried on or about 2018.  Since on or about 2016, Defendants failed to pay overtime wages due to Plaintiff Pujols.

52.      From on or about February 21, 2007 Plaintiff Pujols was employed by Defendants as a field technician performing manual labor, specifically lifting and carrying heavy video and audio equipment for installation at client work sites.

53.     At all relevant times, Plaintiff Pujols was a non-exempt employee who worked an average of approximately sixty (60) to sixty five (65) hours per work week.  Even after Plaintiff Pujols' title was changed to Junior Project Manager, his duties remained the same as when his title was Field Technician.  At no relevant time did Plaintiff have any authority or influence in the hiring, firing, discipline, remuneration or promotion of any other Solutionz employee.  At no

relevant time was Plaintiff permitted to exercise independent judgment or discretion in performing his duties.

54.     Plaintiff Pujols had agreed to move into a Junior Project Manager role as an accommodation for his on the job shoulder injury on or about 2016, believing that it would relieve him of performing manual labor duties with a forty (40) hour work week.  On or about 2016, Plaintiff Pujols had injured his shoulders at work lifting and installing heavy commercial audio / video equipment.  On or about 2016, Plaintiff Pujols was medically diagnosed by the New York State Workers Compensation Board with a disability due to his torn shoulder rotator cuffs.  Notwithstanding Plaintiff Pujols' reliance on a change in title and duties, Plaintiff Pujols was compelled to suffer continued heavy manual labor as he did not wish to lose his job as he had young children to financially support.  As a consequence, Plaintiff Pujols re-injured his shoulder on or about August 5, 2020 lifting and installing heavy commercial audio / video equipment.

55.     The undisputed fact the Plaintiff Pujols injured his shoulder on or about August 5, 2020 directly supports the allegations that his manual labor duties remained unchanged with his transition into an assistant manager title on or about January 2018.  Plaintiff Pujols' injury on or about August 5, 2020 was a culmination of continued injury on a daily basis by performing heavy lifting, holding, and carrying on already injured shoulders, specifically, torn and scarred rotator muscles.

56.     Shortly after taking approximately two days off to obtain medical treatment and recovery and filing for benefits and  his workers' compensation claim after his emergency room visit on or about August 5, 2020, Solutionz added insult to injury by terminating Plaintiff Pujols because they could no longer extract Mr. Pujols' heavy manual labor averaging sixty (60) to sixty five

(65) hours per week for overtime hours without paying overtime compensation. Solutionz terminated Plaintiff Pujols under the guise of Solutionz' eliminating the assistant manager position without any notice whatsoever.  After receiving notice of his discharge, Plaintiff Pujols left the worksite in disbelief and distress that Defendants blindsided him with discharge after approximately14 years of contributing manual labor and contributing to the goodwill of the business as clients requested him specifically to work on projects with his team members.   Most of all, after 14 years of providing labor and loyalty to the business, Plaintiff was in emotional distress about providing for his family including three small children.  The termination occurred during unprecedented unemployment in New York State due to the COVID 19 Pandemic and Plaintiff was further distressed about finding work.

57.    Defendants continued to retaliate against Plaintiff after his discharge by reporting to or updating Plaintiff's credit report with Equifax credit agency on or about December 22, 2020 (3 days before the Christmas holiday) that Plaintiff was "unemployed" to ensure Plaintiff would not obtain future work with prospective employers who frequently make credit background checks of potential employees.  And that during the worst (COVID-19) pandemic to hit the United States in a century and shut down New York State, Defendants ensured that Plaintiff would not maintain credit for basic essentials for life for himself and his family.

58.    Plaintiff Pujols inquired about overtime wages on or about 2018 with management and was told that only union workers (who regularly worked on the same construction projects as Solutionz field technicians), are paid overtime and that Solutionz was not unionized and therefore its employees were not entitled to overtime pay.  Notwithstanding, Plaintiff Pujols was frequently required to complete  or "clean up" union construction workers' work, tasks or duties

after installing heavy commercial audio / video equipment.  Plaintiff Pujols was not compensated with union wages or overtime wages for performing any of this work.

59.     Plaintiff Pujols regularly worked approximately sixty (60) to sixty five (65) hours per week and regularly finished union construction workers' tasks on numerous projects if they were unfinished causing him and other Plaintiffs to work hours past 40 hours per week without overtime compensation.  Plaintiff Pujols regularly submitted timesheets to Solutionz Human Resources Department located in Los Angeles CA for his actual hours worked of approximately sixty (60) to sixty five (65) hours per week but was paid a salary of approximately $78,000 per year for 40 hour workweeks or $1,500 per 40 hour work week but not paid for any hours worked past 40 hours per week.  Plaintiff did not at any relevant time expressly agree to receive a salary for all hours worked or for all hours including hours beyond 40 hours per week.

60.     In violation of NYLL, rules and regulations and NYS Department of Labor Wage Order Plaintiff Pujols and Collective Plaintiffs who were manual laborers were not paid on a weekly basis but instead were improperly paid on bi-weekly basis.

61.     At all relevant times and throughout the course of Plaintiff Pujols' employment with the Defendants, Plaintiff Pujols has suffered long hours approximately twenty (20) to twenty five (25) hours past 40 hours per week performing heavy manual labor that ultimately and further physically disabled Plaintiff Pujols without paying him lawful and due overtime compensation. At all relevant times, management was aware or should have been aware of their failure to pay overtime compensation and Defendants' omission to pay overtime wages was willful.

62.     Defendants retaliated by terminating Plaintiff Pujols on or about August 10, 2020 because of  his disability for taking days off to obtain medical attention and recovery for his shoulder re-injury on or about August 5, 2020; and for filing his Workers Compensation claim

by "eliminat[ing]" his assistant manager position in retaliation for his request for, exercise of and reliance upon his work accommodation on or about August 5, 2020.  The termination was also in retaliation for his disability and inability to further provide heavy manual labor for overtime hours without overtime compensation and for having inquired about being paid overtime wages.

63.    In Burlington v. White 548 US 53, 67 (2006) the Supreme Court held that anti-retaliation protections extend "beyond workplace-related or employment related retaliatory acts and harms."  Accordingly, post employment or post-discharge retaliatory acts by the employer are actionable against them.

64.    Defendants continued to retaliate against Plaintiff after his discharge by reporting to or updating Plaintiff's credit report with Equifax credit agency on or about December 22, 2020 (3 days before the Christmas holiday) that Plaintiff was "unemployed" to ensure Plaintiff would not obtain future work with prospective employers who frequently make credit background checks of potential employees.  And that during the worst (COVID-19) pandemic to hit the United States in a century and shut down New York State, Defendants ensured that Plaintiff would not maintain credit for basic essentials for life for himself and his family.

65.    Based upon information and belief, Solutionz closed all of their physical New York State offices and some or all of approximately 50 employees of Solutionz were terminated from their employment without prior notice at various times throughout 2020 without being paid proper overtime compensation.

66.    At the time of Plaintiff's termination on or about August 10, 2020, he was working on three (3) different projects and there was no business need to eliminate Plaintiff's position for lack of work or otherwise, as Plaintiff at all relevant times performed the essential functions if

not all of the functions of his position as a field technician even after being misclassified as an assistant manager.

67.    Based upon information and belief other employees working on Plaintiff's three (3) projects were not discharged from employment and Plaintiff was treated less well based on his disability.

68.    At all relevant times Plaintiff was qualified for his position with our without any accommodation.  Plaintiff was a field technician with the business since on or about 2007 through on or about August 10, 2020 and clients requested Plaintiff by name for projects. Accordingly, Plaintiff contributed his qualified work performance and assisted the business in building customer goodwill.

69.    Based upon information and belief, Solutionz continues to do business in New York State and New York County to date by dispatching New York State and tri-state resident workers remotely from their Pennsylvania offices to minimize the costs of doing business in NY and to avoid paying competitive NY and/or union hourly and overtime wages.

70.    Based upon information and belief Solutionz is currently performing a multi-million dollar project in New York City and continues to employ PA residents, New York State residents and tri-state residents on this project without payment of competitive hourly wages and proper overtime wages.   Defendants terminated Plaintiff Pujols in willful retaliation for his inability to render manual labor for overtime hours without overtime wages.

71.    Based upon information and belief, over approximately 50 other field technicians, and managers who performed manual labor were willfully not paid overtime wages due to them and were terminated from their employment from the employer under the guise of permanent office / plant shut downs without any notice whatsoever.

72.      As a result of Defendants' actions, of willfully denying overtime wages to their

employees and terminating some employees to avoid paying proper regular and overtime wages,

Plaintiff Pujols and Collective Plaintiffs have suffered great hardship and damages as Defendants

deprived all Plaintiffs of regular and overtime wages during unprecedented difficult economic

times due to the COVID – 19 pandemic and terminated them without prior notice or time to look

for similar employment.   Defendants' actions of permitting Plaintiff Pujols to suffer 20-25 hours

per week of overtime hours of heavy manual labor when he specifically requested a management

position to cease performing those duties, directly and proximately caused Plaintiff Pujols'

permanent and disabling physical injuries.  The oppressive environment imposed upon its

employees by Defendants caused them to overtax their physical limits in order for them to

maintain their livelihoods and benefits.

**FIRST CAUSE OF ACTION**

**Violation of Fair Labor Standards Act – Unpaid Overtime Wages**

73.      Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation

previously set forth as if fully set forth herein.

74.     The overtime wage provisions set forth in FLSA, 29 USC §201 *et seq*. and federal rules and regulations apply to Defendants and protects Plaintiff Pujols.

75.     Plaintiff Pujols regularly worked hours in excess of forty (40) hours per work week during the relevant time period from on or about 2007 through on or about August 10, 2020.

76.     Defendants willfully failed to pay Plaintiff Pujols the appropriate overtime wages for all hours worked in excess of forty (40) hours per workweek, as required by the FLSA, 29 USC §201 *et seq*. and attendant federal rules and regulations.

77.     Defendants' unlawful conduct as described *supra* was willful and intentional. Defendants, a large national, sophisticated employers with unlimited resources were aware or should have been aware that their practices were in violation of overtime wage laws, rules and regulations as detailed in this Amended Complaint. Defendants have refused to reinstate Plaintiff Pujols to a similar position and refused to make a good faith effort to comply with the FLSA regarding compensation of overtime wages to Plaintiff.

78.     Because of Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies pursuant to FLSA, 29 U.S.C § 255(a). As a result of Defendants' willful violations of the FLSA, Plaintiff Pujols has been deprived of overtime compensation in amounts to be determined at the time trial, and is entitled to recovery of such amounts and liquidated damages, pre-judgment interest, attorney's fees, costs and other compensation pursuant to 29 USC 201 et seq.

79.     Defendants retaliated against Plaintiff and discharged him on or about August 10, 2020 for taking days off to obtain medical treatment and recovery after a work injury on or about August 5, 2020 and filing for work benefits and a worker's compensation claim for his on the job shoulder injury on or about August 5, 2020 in violation of FLSA Section 15(a)(3).

80.     Defendants continued to retaliate against Plaintiff after his discharge by reporting to or updating Plaintiff's credit report with Equifax credit agency on or about December 22, 2020 (3 days before the Christmas holiday) that Plaintiff was "unemployed" to ensure Plaintiff would not obtain future work with prospective employers who frequently make credit background checks of potential employees.  And that during the worst (COVID-19) pandemic to hit the United States in a century and shut down New York State, Defendants ensured that Plaintiff would not maintain credit for basic essentials for life for himself and his family.  See, Burlington v.White 548 US 53, 67 (2006) (Anti-retaliation protections extend beyond the workplace and extends to post employment conduct by the employer.)

81.     As a result of the Defendants' violations of the FLSA, Plaintiff suffered damages by being denied wages at or exceeding the statutory minimum in accordance with the FLSA in amounts to be determined at trial and are thus entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216 (b).

## SECOND CAUSE OF ACTION

### Violation of New York Labor Law – Unpaid Overtime Wages

82.     Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

83.     At all times relevant to this action, Plaintiff Pujols was employed by Defendants within the meaning of NYLL §651 and 12 NYCRR §142-2.2.

84.     Pursuant to New York Labor Law Article 19, §663 (3), the statute of limitations of six (6) years further applies to all causes of action beyond the FLSA two (2) or three (3) years statute of limitations period.  29 U.S.C § 255(a).

85.     Defendants failed to pay Plaintiff Pujols the overtime of one and one-half times the

regular hourly rate of pay for all of his overtime hours worked, in violation of the NYLL,

rules and regulations.

86.     Through their knowing or intentional failure to pay Plaintiff Pujols overtime wages

for hours worked in excess of 40 hours per workweek, Defendants have willfully violated

the NYLL, Article 19,§§ 650 et seq., and attendant New York State Department of Labor

Rules, Regulations and wage orders.

87.     Due to Defendants' willful violations of the NYLL, Plaintiff Pujols is entitled to

recover from Defendants his unpaid overtime wages, liquidated damages as provided for by

the NYLL, reasonable attorneys' fees, costs and pre-judgment and post- judgment interest.

### THIRD CAUSE OF ACTION

**New York Labor Law – Failure to Provide Accurate Wage Statements**

88.     Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation

previously set forth as if fully set forth herein.

89.     Defendants have failed to provide Plaintiff Pujols with complete and accurate wage

statements throughout their employment listing, inter alia, all regular hours of work, her rate of

pay, and the basis of pay, in violation of NYLL § 195(3).

90.     Defendants failed to reflect Plaintiff Pujols' overtime wages due and/or actual overtime

hours worked on their respective wage statements.

91.     Due to Defendants' violations of the NYLL, Plaintiff Pujols is entitled to recover from

Defendants' statutory damages of Two Hundred and Fifty dollars ($250) per workday that the

violation occurred, up to a maximum of Five Thousand Dollars ($5,000), pursuant to NYLL §

198 (1-d).

## FOURTH CAUSE OF ACTION

**New York Labor Law – Failure to Provide Notice at Time of Hiring AND/OR at the time of each change in wage rate.**

92.     Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

93.     Defendants failed to provide Plaintiff Pujols at the time of hiring or at any point thereafter, a notice containing the rate of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular pay day designated by the employer; the physical address of the employer's main office or principal place of business; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1).

94.     At all relevant times, Defendants failed to provide Plaintiff's actual hours worked past 40 hours per week on his weekly wage statements.

95.     Due to Defendants' violations of the NYLL § 195(1), Plaintiff Pujols and class Plaintiffs are entitled to recover from Defendants statutory damages of Fifty dollars ($50)per workday that the violation occurred, up to a maximum of Five thousand dollars ($5,000) pursuant to NYLL § 198 (1-b).

## FIFTH CAUSE OF ACTION

**Discrimination based on disability pursuant to Americans with Disabilities Act Amendment Act 2008, eff January 1, 2009 ("ADAAA") 42 USC 12101 et seq.**

96.     Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein.

97.     Pursuant to a Right to Sue letter issued by the Equal Employment Opportunity Commission ("EEOC") on or about July 27, 2021, Plaintiff Pujols brings an action in this Court

pursuant to Title I of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA" or "ADA" as amend. 2008) effective January 1, 2009, 42 USC §12101 et seq.,  New York State Human Rights Law, New York State Executive Law §296 et seq. and New York City Human Rights Law NYC Administrative Code 8-107 et seq.

98.     42 USC §12112 states in relevant part, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to…discharge of employees, employee compensation…and other terms, conditions and privileges of employment."

99.     A qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of his employment position.

100.     On or about 2016, Plaintiff injured his shoulders on the job and was medically diagnosed and declared by the Workers' Compensation Board to have a disability due to torn shoulder rotator cuffs.  The torn rotator cuffs limited the range of motion and use of both arms.  However, at all relevant times, Plaintiff, without accommodations, performed all the essential functions of his position, or heavy manual labor as a field technician and as assistant or junior project manager.

101.     Plaintiff was qualified in his position as he not only performed the essential functions of his position as a field technician since on or about 2007 and starting in 2018 to August 2020 as an "assistant manager," Plaintiff contributed his above average skills to build good will for the business which was evidenced by repeat clients who requested Plaintiff specifically to work on their projects.

102.     In violation of the ADAAA, Defendants discriminated against Plaintiff, a qualified individual, on the basis of his disability, whom, with or without reasonable accommodation, at

all relevant times, provided performance of the essential functions of his employment position as a field tech and thereafter, as assistant or junior project manager.

103.    Defendants willfully limited, segregated and misclassified Plaintiff as an assistant manager to salary his compensation in order to avoid actual overtime compensation and to obstruct his advancement in that position.  Plaintiff accepted the position as a reasonable accommodation to restructure his duties to reduce physical labor duties.  Defendants however, failed to provide the reasonable accommodation as Plaintiff's job duties never changed. Defendants used this misclassification of Plaintiff to avoid payment of overtime compensation and terminated Plaintiff on or about August 10, 2020, mid-project on approximately three (3) separate projects he was assigned to, under the pretext that they eliminated this misclassified, limited and segregated position when Plaintiff re-injured his shoulders on the job on or about August 5, 2020.

104.    Defendants had no business necessity to discharge Plaintiff as Plaintiff was working on 3 separate projects and had already returned to work prior to this discharge on or about August 10, 2020 from his shoulder re-injury on or about August 5, 2020.

105.    In Defendants' email notice of termination dated August 10, 2020 to Plaintiff, Human Resources merely stated, "Notice to employee as to change in relationship, due to position elimination: Involuntary termination effective Monday August 10, 2020."

106.    Under the ADAAA, an employer is liable for retaliation based on disability against an employee when it was aware of the employee engaging a protected activity; the employer took adverse employment action against the employee and a causal connection exists between the alleged adverse action and the protected activity.

107.    Plaintiff engaged in protected activity when he obtained and relied on a reasonable accommodation by accepting a salaried 40 hour work week position with minimal physical labor; requested overtime compensation for actual hours worked, took days off after a work injury to obtain medical attention on or about August 5, 2020 and applied for Workers' Compensation Insurance coverage for his injury on or about August 5, 2020.  In New York, employees are required to file a workers' compensation claim under their employers' worker's compensation insurance policy for any injury incurred during work, to or from work or because of a work related injury.  Plaintiff suffered a re-injury at work on or about August 5, 2020. Plaintiff's supervisor / employer was aware Plaintiff took time off of work on or about August 5, 2020 to obtain medical care for his shoulder re-injury.  RTS Solutionz was the insured on the Workers' Compensation ("WC") Insurance policy covering the Plaintiff employee on or about August 5, 2020 and knew or should have known Plaintiff took time off of work to seek medical attention and filed a WC claim on or about August 5, 2020.  Based upon information and belief, the WC claim notice was sent to the employer contemporaneously with Plaintiff's filing of the WC claim.   Days later, Plaintiff was discharged on or about August 10, 2020.

108.    Discharge for taking sick time off for a work related injury and/or filing a workers' compensation claim for a work related injury and/or as pled throughout this complaint, requesting an accommodation for a prior work-related injury would dissuade a reasonable worker from engaging in either of these necessary and protected activities.  RTS Solutionz adverse employment action taken against Plaintiff would set an oppressive precedent with other employees and deter employees from obtaining necessary medical attention and taking the necessary time off from work for work related injuries which was contrary to the Worker's Compensation Law.

109.    Mere temporal proximity between a plaintiff's protected activity creates a prima facie inference of retaliation based on disability discrimination.  RTS Solutionz discharged Plaintiff within a mere five (5) days from the date Plaintiff sought medical attention for his work related injury and filed a WC claim which created a clear and strong inference of retaliation against Plaintiff based on his disability.

110.    Defendants have continued to retaliate against Plaintiff after his discharge by reporting to or updating Plaintiff's credit report with Equifax credit agency on or about December 22, 2020 (3 days before the Christmas holiday) that Plaintiff was "unemployed" to ensure Plaintiff would not obtain future work with prospective employers who frequently make credit background checks of potential employees.  And that during the worst (COVID-19) pandemic to hit the United States in a century and shut down New York State, Defendants ensured that Plaintiff would not maintain credit for basic essentials for life for himself and his family. See, Burlington v.White 548 US 53, 67 (2006) (Anti-retaliation protections extend beyond the workplace and extends to post employment conduct by the employer.)

111.    Accordingly, Defendants discharged Plaintiff because of his disability and in retaliation for taking time / day(s) off from work to obtain medical treatment and recovery for his injury; to rely on his disability accommodation reduced work hours, reduced physical labor without a reduction in wages; and to file for health and WC benefits and RTS Solutionz is liable to Plaintiff for back pay, front pay, lost benefits, mental anguish, compensatory and punitive damages and attorney fees and costs.

## AS AND FOR A SIXTH CAUSE OF ACTION

**Discrimination and Retaliation based on disability pursuant to New York State Executive Law §296 et seq. and New York City Human Rights Law NYC Admin Code §8-107 et seq.**

112.    Plaintiff Pujols repeats, realleges and incorporates by reference each and every allegation previously set forth as if fully set forth herein

113.    New York State Human Rights Law states in relevant part, "Employment. It shall be an unlawful discriminatory practice: (a) for an employer…because of the actual or perceived …disability,…of any person, to ….discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

114.    As alleged throughout this TAC, Plaintiff Pujols was qualified for his position or with or without reasonable accommodations, he performed substantially all if not all or the essential requisites of his job duties.

115.    As alleged throughout this TAC, at all relevant times, Defendants knew or should have known about Plaintiff's actual or perceived disability.

116.    New York City Administrative Code states in relevant part, "It shall be an unlawful discriminatory practice for an employer…because of the actual or perceived …disability…to discharge from employment such person; or discriminate against such person in compensation or in terms, conditions or privileges of employment."

117.    At all relevant times, Plaintiff had a disability within the meaning of NYC HRL which defines disability as "any physical, medical, mental or psychological impairment."  As pled throughout this complaint, on or about 2016, Plaintiff was determined to be disabled due to torn shoulder rotator cuffs that reduced the range of movement of both Plaintiff's arms.

118.    An employer is liable for disability discrimination if the adverse employment action / employer conduct was caused at least in part by discriminatory or retaliatory motives.  The conduct under NYC HRL does not need to be severe or pervasive to determine liability.

119.    The standard under the NYC HRL is whether under the totality of the circumstances,

Plaintiff was treated less well based on his/her disability.   As pled throughout this complaint,

RTS Solutionz was aware of Plaintiff's disability due to his work related shoulder injury on or

about 2016 and aware of the actual or perceived disability.  Thereafter, in 2018, RTS Solutionz

mis-classified Plaintiff as a "junior" or assistant project manager in order cease paying Plaintiff

for overtime hours he actually worked under the pretext of a "junior" or  "assistant" manager.  In

actuality, Plaintiff's job duties never changed and culminated in the re-injury of his shoulders on

or about August 5, 2020.  As pled throughout this complaint, Plaintiff did not at any relevant

time have the authority to hire, discharge, manage, supervise, advise, or otherwise influence

other employees' terms and conditions of employment.  Plaintiff was working on three (3)

separate concurrent projects within a team without incident until his shoulder re-injury on or

about August 5, 2020.  Based upon information and belief, employees who were working on

ongoing projects did have their positions eliminated and/or discharged.  As previously alleged,

Plaintiff's position as junior/assistant manager was singled out for elimination, and Plaintiff was

discharged despite performing work on three (3) work projects without any other incident aside

from re-injury to his shoulder.  Plaintiff already returned to work, ready willing and able to

perform work on or about August 10, 2020 when he was discharged based on his disability.

120.    Under the NYC HRL, employers are prohibited from retaliating or discriminating in any

manner because such a person…has opposed any practice forbidden under the NYC HRL.

Retaliation or discrimination under the NYC HRL reasonably was likely to deter a person from

engaging in protected activity of taking time off of work to obtain medical treatment and

recovery, to rely on a disability accommodation, and to file for worker's compensation coverage

of the injury.

121.     As pled throughout this TAC, Plaintiff was retaliated against for taking time / day(s) off from work to obtain medical treatment and recovery for his injury; to rely on his disability accommodation reduced work hours, reduced physical labor without a reduction in wages; and to file for health and WC benefits.

122.     Defendants have continued to retaliate against Plaintiff after his discharge by reporting to or updating Plaintiff's credit report with Equifax credit agency on or about December 22, 2020 (3 days before the Christmas holiday) that Plaintiff was "unemployed" to ensure Plaintiff would not obtain future work with prospective employers who frequently make credit background checks of potential employees.  And that during the worst (COVID-19) pandemic to hit the United States in a century and shut down New York State, Defendants ensured that Plaintiff would not maintain credit for basic essentials for life for himself and his family.  See, Burlington v.White 548 US 53, 67 (2006) (Anti-retaliation protections extend beyond the workplace and extends to post employment conduct by the employer.)

Accordingly, Defendants are liable to Plaintiff for back pay, front pay, lost benefits, mental anguish, compensatory and punitive damages and attorneys fees and costs pursuant to the NYS HRL and NYC HRL

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Pujols prays for the entry of an order and judgment against Defendants RTS Solutionz, Warnick and Fernandez jointly and severally, seek the following relief:

A.Issuance of an order declaring  that the practices complained of in this third amended complaint are unlawful pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., New

York Labor Law, Article 19, §§ 650 et seq., and attendant New York State Department of Labor Rules and Regulations, Wage Orders..

B.      Damages for unpaid overtime wages pay under the FLSA, 29 USC §201 et seq. and an additional and equal amount as liquidated damages pursuant to 29 U.S.C.  § 216(b) and the supporting United States Department of Labor Regulations in amounts to be determined at the time of trial;

C.      Damages for unpaid overtime wages under NYLL, NYS DOL Rules, Regulations and Wage Orders, and an additional and equal amount as liquidated damages pursuant to NYLL §198(1-a) and § 663(1) in amounts to be determined at the time of trial;

D.      Civil penalties of Ten Thousand Dollars ($10,000) for each of Defendants' willful and repeated violations of the FLSA 29 USC §207, 215(a)(2) pursuant to 29 U.S.C. § 216(a);

E.      An award of statutory penalties of fifty dollars ($50) per work day up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiff Pujols with wage notices at the time of hiring, or at any point thereafter, pursuant to NYLL § 198 (1-d);

F.      An award of statutory penalties of two hundred fifty dollars ($250) per workday up to five thousand dollars ($5,000) for Defendants' failure to provide Plaintiff Pujols with accurate wage statements, pursuant to NYLL § 198 (1-d);

G.      An award of back wages, front wages, and liquidated damages for the Defendants' prohibited retaliation against Plaintiff Pujols pursuant to 29 U.S.C. § 215(2);

H.      An award of front pay, lost compensation, and liquidated damages up to a maximum of Twenty Thousand Dollars ($20,000.00), for Defendants' prohibited retaliation against Plaintiff pursuant to NYLL § 215(2)(a);

I.      An award of prejudgment interest pursuant to 28. U.S.C § 1961;

J.       An award of pre-judgement interest of nine per cent per annum (9%) pursuant to the New

York Civil Practice Law and Rules §§ 5001- 5004

K.       An award of post-judgment interest pursuant to 28 U.S.C. § 1961 and/or the New York

Civil Practice Law and Rules § 5003;

L.       An award of attorney's fees and costs pursuant to 29 U.S.C § 216(b), NYLL §§ 198 and

663(1); and

M. Reinstatement to employment with reasonable accommodation, an award of back pay, front

pay, lost benefits, compensatory damages for emotional and mental anguish and punitive

damages, attorneys fees and costs pursuant to the ADAAA 42 USC §12101 et seq., NYS Human

Rights Law §296 et seq. and NYC HRL NYC Admin. Code §8-502 et seq.

N.       Such other and further relief as this Court shall deem just and proper.


Dated: New York, NY
          September 23,, 2021


                                                  **LAW OFFICE OF SUSAN GHIM**

                              By:

                                                  _____
                                                  Susan Ghim
                                                  Attorney for Plaintiff Faustino Pujols
                                                  244 Fifth Avenue, Suite 1434
                                                  New York, New York 10001
                                                  (917) 549-4708
                                                  SGHIMESQ@GMAIL.COM