Susan Ghim
Law Office of Susan Ghim
244 Fifth Avenue, Suite 1434
New York, NY 10001
(917) 549-4708 / email: ghimlaw@gmail.com

May 8, 2023

<u>Via ECF</u>
Katherine H. Parker, Magistrate Judge
United States District Court, SDNY
500 Pearl Street
New York, NY 10007

Re:   *Pujols v. RTS Solutionz et al.,* 20cv10373 rel. case 2022 cv 5455 (KHP)
      Motion for Fairness Review and Approval of Settlement Agreement.

Dear Magistrate Judge Parker:

As the Court is aware, the undersigned represents the Plaintiff Pujols in the above referenced related cases. As the parties indicated in a letter to your Honor dated on or about April, 24, 2023 the parties in both related cases agreed to settle this matter without the need for the consolidated bench trial that was scheduled to begin on or about July 17, 2023. As the court is further aware, Co-Plaintiff Russ Deckler only in the related case 22cv5455 settled his claims on or about November 2022 and was dismissed with prejudice from that case. Plaintiff Pujols' resolution of the consolidated cases fully resolves all claims for all remaining parties that were contained in both cases. The parties in these consolidated cases respectfully submit this letter setting forth the reasons that their settlement agreement is fair pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015).

Plaintiff commenced case no. 20cv10373 in this Court to recover: his unpaid overtime wages pursuant to the Fair Labor Standards Act 29 USC §201 et seq. and New York Labor Law 651 et seq. and its rules and regulations N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a); and penalties for wage notice and wage statement violations pursuant to NYLL 195 and back pay for discrimination and retaliation based on his disability pursuant to the Americans with Disabilities Act. On or about May 16, 2022, Plaintiff Pujols brought suit in New York State Supreme Court, Bronx County with Plaintiff Russ Deckler, further alleging violations of the NYLL §§ 191 et seq. for delayed wage liquidated damages; and NYS state common law theory of conversion for prevailing wage damages during the year 2019. On or about June 28, 2022, Defendants removed the state court action to this Court. On or about December 2022, Plaintiff Russ Deckler settled his claims and dismissed this action with prejudice. Plaintiff Pujols is the sole remaining Plaintiff in the related matter 22cv5455.

   I.    **<u>The Proposed Settlement is Fair and Reasonable</u>**

Under the fully executed settlement agreement ("Agreement") attached as **Exhibit A**, Defendants will pay $177,500.00 to Plaintiff Pujols, to settle all of his claims, including attorneys fees as alleged in the Complaints.  Of the $177,500 settlement amount, $120,000.00 net of fees and costs will be paid to Plaintiff Pujols only, subject to applicable taxes, and thirty two and 4/10 percent (32.4 %) reduced from 33 and 1/3 in attorneys fess and costs totaling $ 57,500.00 to be paid to Plaintiff's undersigned counsel Law Office of Susan Ghim.  Pursuant to the terms of the agreement, these settlement payments shall be made within 5 business days of the Court's *Cheeks* approval of the parties' settlement agreement.

Defendants do not acknowledge or admit any liability or wrongdoing whatsoever and agreed to this settlement in contemplation of continuing litigation defense costs and the risks of outcomes at trial.  Defendants and Plaintiff Pujols will also receive a mutual general release of all claims known or unknown by the respective parties to the date of the agreement.

Fairness of Plaintiff's Net Recovery

Courts in this circuit look at the totality of circumstances when deciding whether a FLSA settlement is fair and reasonable.  The factors may include: "(1) the plaintiff's range of possible ***recovery***; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion."  *See, Aly v Dr. Pepper Snapple Grp., Inc.,* 2019 US Dist. LEXIS 100256 at *5; 2019 WL 3388947 (EDNY, 2019) citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (SDNY 2012)  The Aly Court determined that a 20% recovery was fair and reasonable based on the Plaintiff's "potential obstacles to any recovery."  Id. at *6.  In *Gervacio*, the Court determined that a 20% recovery was fair and reasonable based on obstacles to collection.  *Gervacio v. ARJ Laundry Servs.*, 2019 US Dist. LEXIS 12760 at *3 ; 2019 WL 330631 (SDNY, 2019) (This Court declared, "obstacles to collection may justify a reasonable settlement for an amount less than the maximum amount Plaintiff's might have recovered otherwise.")

During the relevant statutory period of six years, Plaintiff was a field technician who installed commercial audio visual equipment at worksites designated by Defendants.  Plaintiff alleged that he was misclassified as exempt and salaried on or about April 30, 2018.  Plaintiff alleged that his job title was changed to junior project manager but his duties as a field technician did not change up to and including the time of his termination on or about August 10, 2020.  Plaintiff further alleged that he did not have the authority to hire, fire, set schedules, set rates of pay or influence the terms and conditions of his and other employees' employment at any relevant time.  As a manual employee, Plaintiff Pujols alleged in the subject Complaint (Case no. 20cv10373) that under the FLSA 29 USC 207 and NYLL 651 et seq., he was entitled to underpayments of overtime wages for the period of employment when he was paid hourly and non-payment of overtime wages after he was misclassified as exempt and salaried.  Plaintiff alleged that while he was paid hourly, Defendants failed to maintain accurate time records and underpaid Plaintiff's overtime wages.  Plaintiff alleged that after he was salaried on or about April 18, 2018, Defendants failed to maintain overtime hours records at all and paid no overtime wages whatsoever regardless of overtime hours actually worked.  Defendants have contested and alleged that they did not owe Plaintiff any overtime wages as 1) he was paid overtime wages when he was paid an hourly rate and 2) after Plaintiff was salaried on or about April 30, 2018, he was an exempt

employee with the title of Junior Project Manager. Based on the lack of proper and accurate documentation of Plaintiff's overtime hours during the relevant time period, Plaintiff's recovery of overtime damages at trial will rely mainly on his recollection and the recollection of non-party witnesses. Because witness testimony would rely heavily on the Court's credibility assessment of the witnesses, Plaintiff's recovery of overtime is susceptible to the risk that his overtime damages would be reduced to approximately two (2) years worth of overtime wage underpayments while he was salaried as opposed to the 6 years alleged. Post discovery, Plaintiff's estimated recovery in full for his overtime claims for approximately 2 years, exclusive of attorney's fees and costs, would be approximately $140,625 (65 hours per week at OT rate of $56.25 (Annual salary $78,000 / 52 weeks = reg. rate hourly rate $37.50 x 1.5 = $56.25 OT rate)). Plaintiff's net recovery of $120,000 under the settlement agreement was approximately 85% of his full overtime wage recovery which is reasonable. *See e.g., Beckert v. Rubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (settlement of approximately 25% of estimated damages "is a substantial proportion of the maximum possible recovery").

Plaintiff made a claim under NYLL §191 for delayed wages which were estimated to be $208,000. Plaintiff alleged that as a manual employee he was entitled to a weekly paycheck under NYLL §191. *See, Vega v. CM & Assoc. Constr. Mgt., LLC, 175 AD 3d 1144 at 1146 (1st Dept., 2019)*; *See also, Gillet v. Zara USA, Inc*. 2022 US Dist. LEXIS 143434 at *30 (SDNY, August 10, 2022) There was no dispute by Defendants that at all relevant times, Plaintiff's wages were paid every two weeks. However, Defendants have asserted that the New York State Courts are split on whether there is an independent cause of action for delayed wage claims pursuant to NYLL §191 The Second ("2d") Dept and its lower courts have consistently held to date, that a Plaintiff does not have private cause of action for liquidated damages pursuant to NYLL §191 and §198. *See, Kruty v Max Finkelstein, Inc.,* 2019 NY Misc. LEXIS 6623 at *8-9 (Sup. Ct. Suffolk County, December 12, 2019) (This trial court ruled, "actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute "underpayment" that would trigger an employees right to commence a lawsuit…this ruling is a department the Vega decision of the Appellate Division First Department…based on the ruling in IKEA…in the Appellate Division Second Department, this court is not bound to follow the rule of law enunciated in Vega."); *See also, IKEA US v. Industrial Bd. or Appeals*, 241 AD2d 454 (2d Dept., 1997); *Phillips v. Max Finkelstein, Inc*. 66 Misc 3d 514, 518-519 (Sup. Ct. Suffolk Cty, December 12, 2019); Grant v. Global Aircraft Dispatch, Inc. 2021 NY Misc. LEXIS 11125 at *6 (Sup. Ct, Queens County, April 20, 2021) (This trial court ruled, "plaintiff does not have a private right of action under NYLL §198(1-a) for a frequency of pay violation of NYLL 191(1)(a)(i)…NYLL 191 does not provide for private recovery for violations of its provisions regarding frequency of payment and…for liquidated damages for wages that were previously paid though untimely.") Defendants in this case have on numerous occasions asserted that they would appeal such a judgment. The risk of obstacles to collecting an award and the likelihood of Defendants appealing the judgment to the Second Circuit are high. Plaintiff would incur additional time, costs and burdens of defending an appeal that would require federal court certification to the New York State Court of Appeals as well as the risk of the highest state court ruling in favor of Defendants. Combined with the undue burden of an appeal, and the potential of losing the appeal posed a substantial obstacle to Plaintiff collecting on his recovery. *See, Gervacio v. ARJ Laundry Servs.*, 2019 US Dist. LEXIS 12760 at *3 ; 2019 WL 330631 The combined maximum potential damages for overtime and delayed wages would have totaled approximately $348,625 and $120,000 would have been a

reasonable 34% recovery. *Beckert v. Rubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) As to Plaintiff's disability discrimination claims, Plaintiff alleged that Defendants discharged him in close temporal proximity to when he requested an accommodation of light work duty due to a workplace injury. Plaintiff was discharged the next business day after the request when he was working on several ongoing projects and other employees were not discharged at that time. Plaintiff's termination however, was made during the COVID 19 pandemic and co-Plaintiff Deckler was laid off on or about October 9, 2020 on the day Defendants' last NY warehouse/office was shuttered closed. The total maximum recovery for the 9 weeks from the date of termination on August 9, 2020 to the date the NY warehouse was closed on or about October 9, 2020 would have been approximately $13,500 (weekly salary of $1,500 x 9 weeks = $13,500) in back pay. The maximum recovery on Plaintiff's prevailing wages was $11,849.00 (Plaintiff's regular and overtime rate difference and prevailing wage rates for approximately 8 months during 2019). Maximum recovery for OT and 191 delayed wages 348,625 + ADA damages $13,500 and prevailing wage damages $11,849 = $373,974 Total Maximum Recovery. $120,000 is approximately 32% of $373,974 which is a reasonable compromised settlement amount. See, *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982))(The Court explained, under *Lynn's Food*, a court may approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  ; *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved."); *See also, Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement" [internal citations omitted]) . Furthermore, since Plaintiff was no longer employed by Defendants since on or about August 2020, coercion and employer overreach were unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here" [internal citations omitted])

Plaintiff Pujols understood that the central issues concerning his FLSA overtime and NYLL delayed wage claims were disputed and that should he continue to trial on this claims, there was no guarantee of a recovery but a lot of risks and obstacles to collection even if he prevailed on one or more of his claims. Plaintiff fully understood the risk that even if he prevailed on his delayed wage claims pursuant to NYLL 191, it was highly likely to be appealed by Defendants.

4862-6420-8445.v1.28535.74718

As detailed *infra*, Plaintiff understood that this case was highly adversarial and contested since commencement and that the undersigned Attorney's fees were far in excess of the settled fee amounts and therefore fair and reasonable as the undersigned did not benefit at Plaintiff's expense. Under the totality of circumstances, Plaintiff's compromised net settlement amount of $120,000 was certain and reasonable compared to the risks and obstacles in proceeding to trial.

## II.     **Plaintiff's Attorneys' Fees are Fair and Reasonable**

The Second Circuit has held, "[w]here the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, …the inquiry is different as the settlement is submitted for approval, not adjustment or revision." *See, Fisher v. SD Prot. Inc*., 948 F3d 593, 606 (2d Cir., 2020)  Under the settlement agreement between undersigned counsel and Plaintiff Pujols, the contingency attorneys fees provision was for 33 and 1/3 percent of the Plaintiff's recovery at settlement or judgment.  Plaintiff's counsel will receive $57,500 from the settlement funds as attorneys' fees and costs. This $57,500 amount represents 32 and 4/10% reduced from 33 and 1/3 % percent of the $177,500 recovery in this litigation.  The total costs included in this amount are: deposition costs of $8,218.95  and subpoena witness fees of $ 240.00; print and postage costs of $45.50 for total costs of $7,913.45.   The net attorneys fees total is; $49,281.05 which should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

The Second Circuit has held that in the situation where the Court approves a portion of a settlement amount as attorney's fees, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *See, Fisher v. SD Prot. Inc*., 948 F3d 593, 606 (2d Cir., 2020)  As detailed *supra*, an 84% recovery on the FLSA overtime claims and a 34% maximum recovery of the FLSA overtime and NYLL 191 claims, given the risks of outcome at trial was an excellent recovery as SDNY case law indicated that even a 25% recovery was a significant recovery.  *See, Beckert v. Rubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) Considering the risks in this case as outlined above, Plaintiff Pujols believed that this settlement was an excellent result, and should be approved as fair.  Undersigned counsel's performance in this matter on behalf of Plaintiff Pujols should also be considered. *See, Fisher v. SD Prot. Inc*., 948 F3d 593, 606 (2d Cir., 2020)   Attached as Exhibit B is the undersigned's Billing Time Sheet for Plaintiff Pujols only for the time period 2020 to date.

The case for Plaintiff Pujols also involved complex litigation issues and was not a run of the mill wage and hour matter.  Defendants have been highly litigious during discovery in the instant matter and in the related case.  The discovery deadline in 20cv10373 was extended approximately 3 times for Defendants' delays in document production and discovery responses.  The discovery deadline in 22cv5455 was extended due to Defendants' motion for judgment on the pleadings to dismiss that case and request for stay of discovery which were both denied.    The undersigned counsel successfully opposed dismissal of Plaintiff's claims in the related Complaint in 22cv5455 which contributed to Defendants' negotiation of the instant settlement in good faith.

The undersigned attorney's fees billed at a rate of $400 per hour was reasonable. The total hours worked on Plaintiff Pujols matter only, up to and including the date of this letter was 261.6 hours totaling in a Lodestar amount of $104,640. The Lodestar amount net of all costs is $96,421.05. The net Lodestar amount was in excess of the net attorneys fees recovery of $49,281.05 ($57,500 (33 1/3%) – 8,218.95 (total costs)) and therefore, did not compromise the Plaintiff's recovery. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff Pujols.

The undersigned counsel for Plaintiff has approximately twenty years of litigation experience in state and federal courts in the New York City ("NYC") area on labor and employment matters including wage and hour defense and prosecution. For approximately four (4) years, the undersigned counsel was an associate of a law firm that practiced primarily in union side labor law and the remaining experience was obtained as a solo practitioner and wage and hour litigation consultant or of counsel to other NYC law firms. The undersigned has successfully procured dozens of settlement agreements for clients who were all satisfied with those outcomes. Based on the number of years of practice and the complexity of issues involved in this case, the undersigned counsel's fee of $400 was reasonable. *See, Hernandez v. El Azteca*, 2021 US Dist LEXIS 236056 at *6 (SDNY, December 9, 2021)(This Court found the rate of $400 per hour for an associate at a small firm in this district and $450 per hour for a managing partner was reasonable)

### III. **The Parties' Mutual Non-Disparagement Clause**

Defendants insisted on a non-disparagement clause and Plaintiff agreed if it was mutual and there was a carve out for truthful statements about this litigation. [Ex. A ¶9] There is a carve out in the provision which states, " However, nothing contained in this paragraph shall restrict Pujols from engaging in protected activity within the meaning of state and federal employment laws and making statements about the facts of the terms and conditions of his employment with the employer RTS Solutionz that may be construed as negative; and nothing contained in this paragraph shall restrict Pujols' testimony under oath before any administrative tribunal, government agency, court of competent jurisdiction, and/or at a deposition pursuant to a subpoena or other notice." Since the provision is mutual and there is a carve out for factual or truthful statements that may be construed as negative, the court should approve the disparagement clause as reasonable. *See, Quic v. Uncle Mario's Brick over Pizza LLC* 2021 US Dist LEXIS 194502 at *5-6 (SDNY, October 7, 2021)

### **Defendants' Statement**

Defendants' counsel concurs that the matters raised by Plaintiff in his complaints would have been vigorously contested at trial. Defendants believe that the chances of success on the claims raised by Plaintiff were not certain. Under all these circumstances, the proposed settlement is fair and reasonable. Defendants desire to enter into the proposed settlement agreement to avoid the inconvenience and costs of ongoing litigation.

Based on the foregoing, the parties respectfully request that your Honor approve the parties' settlement agreement.

6

Respectfully submitted,

/s/ Susan Ghim

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Susan Ghim

cc: to all attorneys of record via ECF

4862-6420-8445.v1.28535.74718